# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| KATELYN KEEFE,<br>    *Plaintiff*<br><br>  v.<br><br>PERRY'S RESTAURANTS LTD<br>d/b/a PERRY'S STEAKHOUSE AND<br>GRILLE and CHRISTOPHER V.<br>PERRY, individually,<br>    *Defendants* | §§§§§§§§§§    Case No. 1:21-cv-01057-RP |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE**

Now before the Court are Plaintiffs' Joint Motion for Partial Summary Judgment, filed March 29, 2023 (Dkt. 36); Defendants' Response, filed April 19, 2023 (Dkt. 41); and Plaintiffs' Reply, filed May 1, 2023 (Dkt. 44).[1]

This is one of eight cases filed in this Court[2] against Defendants Perry's Restaurants LTD and Christopher Perry alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Plaintiffs allege that Defendants violated 29 U.S.C. § 206(a) by paying them a subminimum hourly wage and do not meet the FLSA tip credit exception, which permits employers to pay less

---

[1] By Text Order entered March 30, 2023, the District Court referred the motion to this Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

[2] Seven have identical records: Nos. 1:21-cv-01053, 1:21-cv-01054, 1:21-cv-01055, 1:21-cv-01056, 1:21-cv-01057, 1:21-cv-01058, and 1:21-cv-01060. The eighth case is *Paschal v. Perry's*, No. 1:22-cv-00027-RP, a collective action in which the District Court granted certification of certain of Plaintiffs' side work, uniform and equipment, and tip pool claims on May 16, 2023. All evidentiary citations in this Report and Recommendation are to the docket in *Martinez v. Perry's Rest. Ltd.*, No. 1:21-cv-01053 (W.D. Tex.).

than the general minimum wage to a "tipped employee." 29 U.S.C. § 203(m). Plaintiffs contend that Defendants do not qualify for the tip credit because they did not allow Plaintiffs to retain all their tips and required Plaintiffs to contribute 4.5% of their tips to an illegal tip pool; incur and pay for business expenses; perform non-tipped work unrelated to their tipped occupation; and perform non-tipped work exceeding 20% of their time each workweek. Plaintiffs also allege that the Perry's tip pool was unlawful because it included bussers and food runners, even if they were not staffed for a shift, and that tips earmarked for bussers were not distributed to them.

Plaintiffs in the seven individual cases now move for partial summary judgment on Defendants' liability for violating § 206(a) by paying them below the general minimum wage without satisfying the requirements for taking a tip credit, and for violating § 203(m) by requiring them to "kick back" a portion of their wages to Defendants.

## I. Summary Judgment Standard

Summary judgment will be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute over a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment must identify specific evidence in the record and articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## II.     Analysis

Plaintiffs argue that the Court should grant partial summary judgment because Perry's violated the tip credit and has no evidence to contradict one or more of the following: (1) Defendants did not permit Plaintiffs to retain all tips; (2) Defendants exercised unlawful control over Plaintiffs' tips; (3) Defendants did not fully distribute all tips from the tip pool solely among employees engaged in customarily and regularly tipped duties; and (4) Defendants took a tip credit and paid Plaintiffs $2.13 an hour to perform nontipped duties. Dkt. 39 at 20. Defendants respond that Plaintiffs have not shown that they are entitled to partial summary judgment on any of their claims.

### A.  Individual Defendant Christopher Perry

Defendants contend that Plaintiffs offer no evidence or argument in support of partial judgment against individual Defendant Christopher Perry. Dkt. 45 at 10. The Court agrees that there are no

facts supporting individual liability for Christopher Perry and recommends that summary judgment against him be **DENIED**.

### B. Uniform and Equipment Claim

Plaintiffs point out that Defendants have the burden to prove their entitlement to the tip credit, an affirmative defense. They also contend that it is "undisputed that Plaintiffs paid for uniforms (e.g. shirts, vests, non-slip dress shoes, dry cleaning), tools (e.g. pepper mills, pepper mill holsters, crumbers, server books, ink pens, wine openers, black and silver sharpies, permanent markers, lighters, wine keys, flashlights), and other items needed to work at Perry's." Dkt. 39 at 23. Plaintiffs argue that these deductions violated the FLSA tip credit and anti-kickback provisions.

Defendants respond that the FLSA imposes two requirements for an employer to take a tip credit: the tipped employee must be (1) "informed by the employer of the provisions of this subsection," and (2) allowed to retain all tips except for the pooling of tips among employees who "customarily and regularly receive tips." Dkt. 45 at 27 (quoting § 203(m)(2)(A)). Defendants also argue that the FLSA generally prohibits employers from shifting the costs of uniform and equipment to an employee if doing so reduces the employee's pay below minimum wage, but this rule is "conceptually distinct from the tip credit rule." *Id.* at 26.

#### 1. Burden to Prove Tip Credit Defense

Plaintiffs argue that Defendants "violated the tip credit as a matter of law because Plaintiffs paid for uniforms, tools, and other non-203(m) items and kick-backs." Dkt. 49 at 5. Defendants respond that the FLSA uniform/equipment rule "is a generally applicable rule that applies to all employees, whether or not an employer relies on the tip credit. Plaintiffs simply allege that being required to bear the costs of certain items means that Perry's did not pay them at the $7.25 per hour minimum wage rate." Dkt. 45 at 16 n.2. Therefore, Defendants argue, Plaintiffs bear the burden of proof on their uniform and equipment claim. Because the parties dispute who has the

burden of proof on that claim, the Court addresses this issue before reaching the merits of Plaintiffs' motion for partial summary judgment.

The FLSA requires employers to pay employees a minimum wage. 29 U.S.C. § 206(a). Employers must pay employees the wages to which they are entitled "finally and unconditionally or 'free and clear'" and may not require employees to "kick-back" a portion of their wages "directly or indirectly" to the employer. 29 C.F.R. § 531.35. An employer who requires an employee to provide "tools of the trade which will be used in or are specifically required for the performance of the employer's particular work" violates the FLSA if the cost cuts into the employee's minimum wage. *Id.* Kickbacks are not illegal per se, but are impermissible when such deductions deprive an employee of the federally mandated minimum wage or overtime pay. *Cudnik v. W.L. York, Inc.*, No. H-20-2998, 2021 WL 3674972, at *2 (S.D. Tex. Feb. 5, 2021).

Minimum wage is $7.25 per hour, but the FLSA has an exception that permits employers to pay less than the general minimum wage – $2.13 per hour – to a "tipped employee" as long as the employee's tips make up the difference between the $2.13 minimum wage and the general minimum wage. *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015) (citing § 203(m)). This exception is called the "tip credit." To qualify for the tip credit, employers must (1) inform employees of the provisions of § 203(m), and (2) allow employees to retain all tips received, except that tip pooling is permitted among employees who customarily and regularly receive tips. *Id.* at 188 & n.3; *Bernal v. Vankar Enters., Inc.*, 579 F. Supp. 2d 804, 807-08 (W.D. Tex. 2008). Because the tip credit is an affirmative defense to a minimum wage claim, it is the employer's burden to prove that the credit applies. *See Barcellona v. Tiffany Eng. Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979).

Plaintiffs conflate the tip credit defense with their uniform and equipment claim. The Court agrees with Defendants that the tip credit defense does not place the burden on them as to Plaintiffs' claim that they had to "kick-back" part of their wages through uniform and equipment expenses. While the Court also agrees with Plaintiffs that Defendants have the burden to show that each of its deductions was lawful, this inquiry is separate from the tip credit analysis.

The cases Plaintiffs cite do not alter this conclusion. Plaintiffs rely on *Ettorre v. Russos Westheimer, Inc.*, 2022 U.S. App. LEXIS 7295 (5th Cir. 2022) (unpublished) (per curiam), but in that case, the Fifth Circuit addressed the district court's findings on the defendant's tip credit and linen fee separately. Plaintiffs also rely on *Lopez v. Fun Eats & Drinks, LLC*, No. 3:18-CV-1091-X, 2021 WL 3502361, at *6-7 (N.D. Tex. July 16, 2021), *R. & R. adopted*, 2021 WL 3493496 (N.D. Tex. Aug. 9, 2021), in which the court found that the defendant could not use the tip credit provision where it required employees to pay for uniforms, cash register shortages and walked tabs, and meals above their actual cost, bringing plaintiffs' wages below the $2.13 hourly minimum. The Court is persuaded by other courts that have separated these inquiries. *See, e.g.*, *Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 721 (W.D. Tex. 2010) (addressing uniform deductions as failure to pay minimum wage claim separately from tip credit defense); *Reich v. Priba Corp.*, 890 F. Supp. 586, 596-97 (N.D. Tex. 1995) (treating unlawful uniform deductions as failure to pay minimum wage claim separate from tip credit defense).

### 2. Evidence

An employer may not deduct from employee wages the cost of facilities that primarily benefit the employer if such deductions drive wages below the minimum wage. *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1236 (11th Cir. 2002) (citing 29 C.F.R. § 531.36(b)). Whether expenses qualify as "primarily for the benefit of the employer" turns on "whether the employment-related cost is a personal expense that would arise as a normal living expense." *Id.* at 1243.

Uniforms are an expense that primarily benefits the employer. *See Ayres v. 127 Rest. Corp.*, 12 F. Supp. 2d 305, 310 (S.D.N.Y. 1998). Although the term "uniform" is not defined under federal law, the Department of Labor has suggested the following guiding principles:

> If an employer merely prescribes a general type of ordinary basic street clothing to be worn while working and permits variations in details of dress the garments chosen would not be considered to be uniforms. On the other hand, where the employer does prescribe a specific type and style of clothing to be worn at work (*e.g.*, where a restaurant or hotel requires a tuxedo or a skirt and blouse or jacket of a specific or distinctive style, color, or quality), such clothing would be considered uniforms.

FIELD OPERATIONS HANDBOOK § 30c12(f)(1)(a)-(b) (2016).[3]

Plaintiffs submit evidence that Defendants required servers to have particular clothing items, equipment, and certifications to perform their jobs. This evidence includes the following deposition testimony from David Freeman, Perry's corporate representative, and eight Plaintiffs:

- Servers are required to meet uniform requirements and have a pepper mill and holster and a crumber (Freeman Tr. at 66:6-69:23, Dkt. 40-3 at 54-55);

- Perry's deducted the cost of replacement vests, pepper mills, and crumbers from Plaintiff Weston Clarke's paycheck and he independently bought a wine opener, pens, dress shoes, and pants (Clarke Tr. at 106:14-111:25, Dkt. 40-4 at 152-53);

- Perry's does not provide any part of the required uniform, and Plaintiff Paul Neuman had to purchase food handler and Texas Alcoholic Beverage Commission ("TABC") certifications, server books, and additional crumbers (Neuman Tr. at 51:1-22, 53:9-25, and 56:4-16, Dkt. 40-5 at 6-7);

- Plaintiff Ashleigh Scott had to purchase crumbers and food handler and TABC certifications (Scott Tr. at 135:21-136:23, 140:11-24, Dkt. 40-6 at 49-50);

- Plaintiff Daniel Elizondo had to have a server book, flashlight, wine key, nonslip shoes, dry-cleaned white shirt and black slacks, food handler and TABC certification, and pens and markers, and was charged for replacements (Elizondo Tr. at 91:12-92:14, 95:6-19, 102:4-16, and 103:8-104:9, Dkt. 40-5 at 24-25, 27);

---

[3] https://www.dol.gov/agencies/whd/field-operations-handbook/Chapter-30#B30c12 (last visited May 19, 2023).

- Servers had to buy their own vests, pepper mills, aprons, pants, nonslip shoes, crumbers, server books, flashlights, pens, Sharpies, wine keys, and food handler and TABC certifications and renewals (Sharif Tr. at 61:8-25, 62:1-12, and 100:3-101:20, Dkt. 40-5 at 41, 50-51);

- Plaintiff Ryan Dickman had to provide his own wine key, pens, and server book, and purchase a replacement pepper mill from Perry's (Dickman Tr. 86:25-88:6, 90:1-91:6, Dkt. 40-5 at 91-92);

- Perry's charged Plaintiff Evelyn Castaneda Martinez for tools "frequently," and she had to purchase pens, Sharpies, and wine keys (Martinez Tr. at 54:17-55:14, 56:15-25, and 58:4-20, Dkt. 40-6 at 60-61); and

- Plaintiff John Vilbig had to pay for his apron, vest, crumber, server book, flashlight, pens, shirt, pants, and nonslip shoes at the start of his employment (Vilbig Tr. at 64:15-65:2, 66:13-15, 67:10-12, 69:20-23, and 70:6-8, Dkt. 40-6 at 102-04).

Perry's uniform policy specifies the type and color of required shirts, bottoms, belts, socks, shoes, and bow ties for men. *See* Dkt. 40-1 at 52-53. The policy states that shirts and slacks must be "pressed" for each shift and that employees must provide a "wait book, wine key, non-logo lighters, (4) non-logo black click pens, black marker, [and] crumber," as well as a bottle opener for cocktail servers. *Id.* Plaintiffs submit authorization forms for uniform deductions stating that the cost of replacement equipment is to be deducted from Plaintiffs' paychecks. Authorization forms for Plaintiff Jamie Linn, who does not provide deposition testimony, show that the cost of replacement items was deducted from Linn's paycheck four times. Dkt. 50-7 at 52-55. Plaintiffs also testified that they paid for replacement tools while at work. Martinez Tr. at 54:17-58:20, Dkt. 40-6 at 60; Neuman Tr. 51:14-52:3, Dkt. 40-5 at 6; Elizondo Tr. 91:21-92:7, Dkt. 40-5 at 24; Sharif 62:1-12, Dkt. 40-5 at 41; *see also* Clarke Tr. 107:18-108:24, Dkt. 40-4 at 152 (testifying that he was both charged while at work and that deductions were taken from his paycheck).

Defendants submit declarations from General Managers Anthony Garcia, Greg Grady, and Rebecca Munns. The General Managers state that Perry's provided newly hired servers with vests, a pepper mill and holder, and a crumber. Dkts. 46-1 at 12, 46-2 at 11, 46-3 at 13. They aver that

8

they provided employees with free replacements and charged servers only in rare instances. *Id.* They also state that they have no recollection of charging Plaintiffs for replacements. *Id.* The General Managers state that Perry's did not require flashlights and that servers already owned items such as lighters, and they deny that servers were required to have their shirts dry cleaned. *Id.*

The Court finds that a fact issue exists as to whether the clothing items Perry's required employees to wear constituted uniforms so that Defendants must reimburse Plaintiffs for the expense. *See Ayres*, 12 F. Supp. 2d at 310 (denying defendant's motion for summary judgment because although most items could be "worn as part of an employee's ordinary wardrobe," employees who forget items were not permitted to work and dry-cleaning costs were imposed); *see also* DEP'T OF LABOR, WAGE & HOUR DIV., OP. LETTER FLSA 2020-12 (stating that employers need not reimburse employees for white or button-down shirts with dark pants); DEP'T OF LABOR, WAGE & HOUR DIV., OP. LETTER FLSA 2008-4, p. 2 (May 15, 2008) (stating that dark-colored, non-slip shoes were not a "uniform" under the FLSA). Nor have Plaintiffs established that Defendants' policy required their clothes to be dry cleaned. *See Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010) (stating that "the law is clear that employers are only required to reimburse employees if the uniforms require some kind of special treatment, *i.e.* dry-cleaning").

As to the vests, pepper mills and holders, and crumbers, the Court finds that Defendants fail to raise a genuine issue of material fact as to liability. Plaintiffs offer evidence that Perry's had a policy of charging servers for replacements. Dkt. 50-7. Rather than disputing this policy, the General Managers state that they do not recall charging Plaintiffs for replacement items, that it was their practice to provide free replacements, and that they "only deviated from this in the rare case where the server was 'egregiously losing stuff,'" Dkt. 46-1 at 12 (Garcia); "had lost an excess

number of such items in a short period of time, indicating that his or her conduct was beyond careless," Dkt. 46-2 at 11 (Grady); or "had requested replacements every week for an extended period of time," Dkt. 46-3 at 13 (Munns). Garcia states that the procedure to be used when charging for uniform or tool replacement costs "was to fill out a form to HR." Dkt. 46-1 at 13. Whether employees paid for replacements while at work or the costs were deducted from their paychecks, the Court finds that there is no genuine issue of material fact as to Defendants' liability for the uniform and tool replacement policy.

Defendants also argue that Plaintiffs have not established that they were charged unlawfully for vests, pepper mills and holders, and crumbers. Defendants rely on Department of Labor guidance that employees may not be required to pay for items that primarily benefit the employer, even where the loss is due to "work-related negligence." DEP'T OF LABOR, WAGE & HOUR DIV., OP. LETTER FLSA 2008-10 (Oct. 24, 2008). Defendants offer no evidence that any losses exceeded work-related negligence. In addition, the employer has the burden to maintaining records of deductions made from employees' wages for two years. *Id.* (citing 29 C.F.R. § 516.2(a)(10)). Defendants offer no records to dispute Plaintiffs' claimed deductions.

Because Plaintiff Katelyn Keefe submits no evidence that Perry's required her to incur these expenses, the Court recommends that the District Court deny summary judgment.

For the remaining items, such as wine keys, pens, flashlights, lighters, cash, and server books, the Court finds that Defendants have raised a genuine issue of material fact as to whether these arise as a "normal living expense" and thus do not primarily benefit the employer. *Arriaga*, 305 F.3d at 1243.

Finally, some Plaintiffs submit evidence that they had to purchase TABC certifications and food handler's licenses. Neuman Tr. at 56:4-16, Dkt. 40-5 at 7 (stating that he had to purchase

10

TABC certification and food handler's license to work at Perry's); Elizondo Tr. at 103:22-104:5, Dkt. 40-5 at 27 (same); Sharif Tr. at 101:13-20, Dkt. 40-5 at 51 (same); Keefe Tr. at 86:6-18; 87:1-14, Dkt. 40-5 at 72 (stating that she had to renew her TABC certification and food handler's license to work at Perry's); Ferracioli Tr. at 42:24-44:23, Dkt. 40-6 at 2 (same); Scott Tr. at 140:11-24, Dkt. 40-6 at 50 (same).

Defendants admit that Perry's required servers to have TABC certificates and submit no evidence disputing that food handler's licenses were required. *See, e.g.*, Freeman Tr. at 68:5-20, Dkt. 40-3 at 55 (testifying that servers are required have TABC certifications); Henderson Tr. at 97:1-99:9, Dkt. 40-4 at 25-26 (same). While Defendants argue that these are occupational licenses required by the state of Texas and not for the benefit of Perry's, courts have found that professional licenses primarily benefit the employer, not the employee. *See Lockett v. Pinnacle Ent., Inc.*, 408 F. Supp. 3d 1043, 1047-48 (W.D. Mo. 2019) ("Contrary to Defendants' assertions, it does not matter that a gaming license is mandated by State law rather than the employer."); *Williams v. Secure Res. Commc'n Corp.*, No. 11-cv-03986, 2013 WL 4828578, at *6 (S.D.N.Y. Sept. 10, 2013) (granting summary judgment on claim that defendant violated FLSA by deducting cost of security guard license because "[p]rofessional licensing costs arise out of employment rather than the ordinary course of life" and primarily benefit employer). The Court finds that the TABC certifications and food handler's licenses primarily benefit the employer. Because Defendants do not dispute that servers had to pay for TABC certifications and food handler's licenses, the Court recommends that the District Court grant summary judgment to Plaintiff Katelyn Keefe on her claim that Perry's violated the FLSA by requiring her to incur these expenses, which caused her wages to drop below minimum wage.

11

## C. Tip Pool Claims

Next, Plaintiffs argue that Defendants' tip pool was unlawful because (1) tip pool funds were not distributed "pursuant to an agreement among Plaintiffs," and (2) the tip pool included employees who were not customarily and regularly tipped: bussers, barbacks, food runners, service well bartenders, hosts, and "off-hour" employees. Dkt. 39 at 24. Defendants respond that mandatory tip pool arrangements and distribution are valid. They also argue that all employees who participated in the tip pool customarily and regularly received tips.

### 1. Customarily and Regularly Tipped Employees

The Court first addresses Plaintiffs' argument that Defendants distributed tips to employees who were not eligible to participate in the tip pool and thereby forfeited the tip credit. Plaintiffs argue that bussers, barbacks, food runners, service well bartenders, and hosts engaged in significant amounts of work that did not produce tips and are not eligible to participate in the tip pool while doing such work. Defendants respond that the eligibility of these employees to participate in the tip pool is determined by the duties they perform over the course of a week, and that this issue should be submitted to a jury.

An employer may not claim a tip credit unless the tip pool is limited to employees who "customarily and regularly receive tips." 29 U.S.C. § 203(m). Because the phrase "customarily and regularly receive tips" is ambiguous, the Department of Labor's administrative materials are useful in giving the phrase meaning. *Montano*, 800 F.3d at 190. The agency gives these examples of occupations that "customarily and regularly receive tips" and those that do not: Waiters, bellhops, counter personnel who serve customers, busboys or server helpers, and service bartenders generally are tipped occupations, while janitors, dishwashers, chefs or cooks, and laundry room attendants are not. *Id.* at 190-91 (citing U.S. DEP'T OF LABOR, FIELD OPERATIONS

HANDBOOK § 30d04(a), (c) (1988)). An employee's title does not determine whether the employee customarily and regularly receives tips. *Id.* at 191.

> The central difference between employees who are traditionally tipped and those who are not is that the former work primarily in the front of the house where they are seen by and interact with customers, while the latter work primarily or exclusively in the back of the house.

*Id.* at 193 (citing *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 231 (5th Cir. 2011)). A court "must consider the extent of an employee's customer interaction" and "whether the employee is engaging in customer service functions." *Id.*

Plaintiffs argue that "it is unlawful to pay an employee from the tip pool for *any* time the employee spends engaged in nontipped duties not related to their tipped occupation." Dkt. 49 at 12. Plaintiffs rely on the "dual jobs" regulation in 29 C.F.R. § 531.56(e). The dual jobs regulation prohibits an employer from paying an employee the tipped rate of $2.13 per hour for hours the employee spends performing unrelated work which does not produce tips, such as where a server also works as a maintenance person.

Section 531.56(e) does not affect which employees "customarily and regularly receive tips" or alter the *Montano* analysis. *See Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1035-36 (N.D. Ill. 2012) (stating that "the tip pool regulation and the dual jobs regulation regulate two different practices and answer two different questions"). The cases cited by Plaintiffs hold that an employee may not be paid at the tipped rate when performing work unrelated to their tip-producing work, and that an employer cannot turn an employee into one who customarily and regularly receives tips simply by allowing them to receive tips. *See Marsh v. J. Alexander's LLC*, 905 F.3d 610, 633 (9th Cir. 2018) (holding that employee stated claim for full hourly wages for hours spent in non-tipped occupation); *Barrera v. MTC, Inc.*, No. SA-10-CA-665-XR, 2011 WL 3273196, at

13

\*9 (W.D. Tex. July 29, 2011) (holding that employees were not eligible tip pool recipients simply because employer allowed them to share tips regularly).

Applying *Montano*, the Court finds that Plaintiffs are not entitled to summary judgment on their tip pool claim. In their declarations, Defendants' three General Managers describe the responsibilities of bussers, barbacks, food runners, service well bartenders, and hosts at the restaurants they managed. The General Managers aver:

- Bussers' primary responsibility was collecting items from guests' tables. Tasks such as cleaning or checking bathrooms, picking up trash outside, and mopping or vacuuming were split among several bussers and took 20 minutes or less in a 6- to 7-hour shift.

- Barbacks served as bussers for the bar. Barbacks were always in the sight of guests, but also helped monitor the restroom during their shift, which took a few minutes, and performed tasks at the end of their shift, which took less than 30 minutes.

- Food runners' primary responsibility was to run food and other items to tables and perform certain "table-side" activities. Food runners spent about 30 to 45 minutes performing closing activities in a 6- to 6.5-hour shift.

- Service well bartenders generally worked behind the main bar, except during busy shifts, when they were moved to create room for bartenders. The General Managers estimate that service bartenders spent 20 to 90 minutes cleaning during their shifts.

- Hosts' primary responsibility was to greet guests, show them to their tables, and handle reservations and phone calls. Hosts performed minimal cleaning tasks, such as wiping down menus or checking bathrooms.

Dkts. 46-1 at 7-9, 46-2 at 7-9, 46-3 at 7-9. The General Managers also state that when barbacks or bussers performed other tasks, such as food preparation, dishwashing, or deep cleaning, they clocked in under a different job code. Dkts. 46-1 at 7-8, 46-2 at 7, 46-3 at 7.

Plaintiffs argue that undisputed evidence shows service well bartenders were "confined to working in the kitchen during their busiest shifts"; bussers spent significant time on cleaning activities; food runners performed janitorial and food preparation duties daily; and hosts spent several hours per week checking the women's bathroom. Dkt. 49 at 16. The Court finds that this does not establish that these employees were "back of the house" employees, did not engage in a

14

significant degree of customer interaction, or were not performing customer service functions. *Montano*, 800 F.3d at 193.

Plaintiffs also submit evidence disputing the tasks performed, time spent on non-tip producing tasks, and extent of customer interaction. This evidence shows that material questions of fact remain. *See Plewinski v. Luby's Inc.*, No. CV H-07-3529, 2008 WL 11389210, at *4 (S.D. Tex. Oct. 1, 2008) (denying defendant's motion for summary judgment because fact issues remains as to tasks performed and typical amount of time allotted to each task). Therefore, the Court recommends that summary judgment be denied as to Plaintiffs' claim that employees who did not "customarily and regularly receive tips" participated in the tip pool.

### 2. Mandatory Tip Pool

Plaintiffs also argue that Defendants violated the tip credit because they "unilaterally decide[d] how to distribute the tip pool, including using the tip pool to fund the flat hourly wages paid to [their] other employees." Dkt. 39 at 25. Defendants respond that the Court should not consider this claim because Plaintiffs failed to plead it. Dkt. 45 at 29. Defendants further argue that there is no requirement that tip pools be distributed pursuant to an agreement among the participants, and that employees who received wage guarantees are eligible tip pool participants.

First, the Court finds that the tip pool was not invalid because Defendants "unilaterally" decided how the tip pool was distributed. The relevant statute, 29 U.S.C. § 203(m), "expressly permits the 'pooling of tips' and does not bar employers from requiring tip pooling." *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 303 (6th Cir. 1998); *see also Roussell v. Brinker Int'l, Inc.*, No. H-05-3733, 2008 WL 2714079, at *17-18 (S.D. Tex. July 9, 2008) (discussing difference between mandatory and voluntary tip pools). An employer "may require" an employee to contribute to a tip pool, but "must notify its employees of any required tip pool contribution amount." 29 C.F.R. § 531.54(c). Although Plaintiffs argue that they "had no input or knowledge

15

that their tips were being used to fund the fixed hourly wages Defendant was obligated to pay its other employee," Plaintiffs expressly state that they are not pursuing a claim that Defendants failed to provide notice of the tip pool arrangement. Dkt. 39 at 6 n.3, 27.

Second, Plaintiffs argue that Defendants used tip pool funds to pay wages to other employees. Dkt. 39 at 27. Plaintiffs do not dispute Defendants' representation that they made a wage rate commitment to certain tip pool recipients, which set a compensation "floor" for those employees. Dkt. 45 at 34. Plaintiffs rely on *Cross v. 440 Corp.*, No. 2:06-CV-0191, Dkt. 93 (N.D. Ga. Sept. 24, 2008), in which the court held that using servers' tips to pay employees' fixed salaries violated the FLSA requirement that tip pool funds be distributed only to those who customarily and regularly receive tips. The Court finds no support for the contention that guaranteeing certain tip pool participants a minimum wage rate removes those employees from the definition of those who "customarily and regularly receives tips."

### 3. Weekly Distribution

Plaintiffs also argue that Defendants violate the tip credit "by distributing tips to pay employees who were indisputably not involved whatsoever in serving the customer who left the tip," in that they used tips to pay wages of employees who were not present at the restaurant during the shift when the customer who left the tip dined. Dkt. 39 at 37. Plaintiffs rely on the Fifth Circuit's statement that the goal of the inquiry into which employees are eligible tip pool participants is to "determine[e] the customer's intent." Dkt. 39 at 37 (quoting *Montano*, 800 F.3d at 193). Plaintiffs reason that: "Absent *any* interaction between the customer and the employee, the customer simply could not have intended to tip an off-hour employee." Dkt. 49 at 16.

It is undisputed that Defendants distribute tip pool proceeds to employees "*pro rata*, based upon the hours they worked each week in one of the positions eligible for tip pool money compared to the total hours worked by all tip pool recipients for that week." Dkt. 45 at 14. Plaintiffs have not

16

shown as a matter of law that the FLSA prohibits weekly distribution of tip pool funds. 29 U.S.C. § 203(m)(2)(A)).[4]

### D. Side Work Claim

Finally, Plaintiffs argue that Defendants violated the FLSA by requiring servers to perform non-tipped duties unrelated to their tipped occupation and spend more than twenty percent of their time performing related, non-tipped duties, while compensating them at the tipped hourly rate. Plaintiffs also argue that under the burden-shifting framework established by *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), they may provide testimony approximating the time spent performing non-tipped duties. Defendants respond that there is contradictory evidence on whether Plaintiffs were assigned unrelated side work and the extent of related side work they performed.

Under the FLSA, an employer may rely on the tip credit exception for a tipped employee who spends a portion of time performing work that does not produce tips but directly supports tip-producing work. 29 C.F.R. § 531.56(f). Time spent on supporting work must not exceed twenty percent of the employee's work. *Id.* A server's directly supporting work includes "dining room prep work, such as refilling salt and pepper shakers and ketchup bottles, rolling silverware, folding napkins, sweeping or vacuuming under tables in the dining area, and setting and bussing tables." *Id.* An employer may not rely on the tip credit exception for work that does not directly support tip-producing work, such as preparing food and cleaning the kitchen or bathrooms. *Id.*

---

[4] The Court construes the phrase "off-hour" in the cases Plaintiffs cite not as referring to employees who do not work a particular shift when a tip is left, but those working when customers are not present. *See, e.g.*, *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 301 (6th Cir. 1998) (distinguishing hosts from "off-hour employees like an overnight janitor" who have no direct customer interaction).

### 1. Related Side Work

An employee has the initial burden to establish that they worked hours for which they were not properly paid, but if an employer does not maintain records of the employee's time, the employee can "show the amount and extent of that work as a matter of just and reasonable inference." *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 882 (8th Cir. 2011) (cleaned up).

Plaintiffs submit substantial evidence that Perry's required them to perform related side work accounting for more than twenty percent of their time during each workweek. Plaintiffs argue that, under *Mt. Clemens*, they are "entitled to provide testimony that approximates—by a just and reasonable inference—the time they spent performing nontipped duties." Dkt. 39 at 43. Defendants respond that Plaintiffs "cannot show, as a matter of law, that they performed side work in scope, or to a sufficient degree in time, that they were effectively performing a separate job when they performed such side work." Dkt. 45 at 13. In their declarations, Defendants' General Managers dispute the number of tasks each server was assigned and the overall amount of time spent performing related side work. Dkt. 46-1 at 10-12; 46-2 at 9-11; 46-3 at 10-12. They assert that side work tasks were split among employees and servers were not required to perform "opening" and "closing" side work in the same shift. Dkts. 46-1 at 10, 46-2 at 9. They also state that little to no side work was performed while the restaurants were open. Dkts. 46-1 at 9, 46-2 at 11, 46-3 at 11. The General Managers estimate that side work generally took less than 45 minutes per shift, and that no server spent more than an hour performing side work. Dkts. 46-1 at 11, 46-2 at 10-11, 46-3 at 11.

The Court finds that there are genuine issues of material fact as to whether Defendants required Plaintiffs to spend more than twenty percent of their time on untipped related duties. Accordingly, the Court recommends that summary judgment be denied on Plaintiffs' related side work claim.

### 2. Unrelated Side Work

The Court also finds that there are genuine issues of material fact as to whether Plaintiffs were required to perform unrelated side work. Plaintiffs submit testimony that they had to do unrelated side work, including cleaning toilets, cooking food, or taking out the trash. Defendants' three General Managers assert that servers did not perform this unrelated side work. They admit that servers had to place applesauce on ramekins brought to guests' tables and warm bread in the oven, but dispute that Plaintiffs were required to perform all other tasks. The Court finds that placing applesauce on ramekins and warming bread relate to the servers' occupation. These tasks cannot form the basis of an FLSA violation unless they exceed twenty percent of servers' time. Because Defendants provide evidence disputing Plaintiffs' accounts of the other tasks they were required to perform, the Court finds that genuine issues of material fact exist and recommends that summary judgment on Plaintiffs' unrelated side work claim should be denied.

### III.   Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Plaintiffs' Joint Motion for Partial Summary Judgment (Dkt. 36). The Court recommends that the District Court **GRANT** summary judgment as to Defendant Perry's Restaurants LTD d/b/a Perry's Steakhouse and Grille's liability for the cost of Plaintiff Keefe's licenses. The Court recommends that summary judgment be **DENIED** in all other respects.

If the District Court accepts these recommendations, Keefe's following claims will remain:

(1) Keefe's claims that Defendants violated the FLSA's minimum wage requirements and are not entitled to the tip credit because they did not allow Plaintiffs to retain all their tips and required Plaintiffs to contribute 4.5% of their tips to an illegal tip pool, perform non-tipped work unrelated to their tipped occupation, and perform non-tipped work exceeding 20% of their time each workweek;

(2) Keefe's claim that Defendants violated the FLSA's minimum wage requirements by requiring them to pay for clothing and other items and incur dry-cleaning expenses;

(3) Expenses for aprons, vests, pepper mills and holders, and crumbers for Keefe; and

(4) All claims against Christopher V. Perry, individually.

It is **ORDERED** that this case be **REMOVED** from this Magistrate Judge's docket and **RETURNED** to the docket of the Honorable Robert Pitman.

## IV.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on May 22, 2023.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE